Andrew GIORDANO, Petitioner,

v.

UNITED STATES of America,
Respondent.

Nos. 98 Civ. 6382(LLS), 94
Cr. 606–02(LLS).

United States District Court,
S.D. New York.

Jan. 7, 1999.

Marcia G. Shein, Shein & Biggs, Atlanta, GA, for Petitioner.

Robert E. Rice, Asst. U.S. Atty., New York City, for Respondent.

## MEMORANDUM AND ORDER

STANTON, District Judge.

Although this court's November 3, 1998 Opinion and Order denying Mr. Giordano's § 2255 application closed with the words, "A certificate of appealability is not warranted because the petition is clearly without merit. So ordered.", the Court of Appeals has dismissed Mr. Giordano's November 12, 1998 Notice of Appeal, stating that "the file of the proceedings does not contain either a certificate of appealability or a denial thereof." Court of Appeals Mandate, No. 98–2978 (2nd Cir., Nov. 30, 1998). That dismissal being without prejudice to the reinstatement of his appeal within 30 days from the entry of an order by this court, which Mr. Giordano was directed to seek promptly, *id.*, he has timely applied for a certificate of appealability. He takes the opportunity to clarify two arguments he made in his § 2255 petition. Neither has merit.

Mr. Giordano asserts that the court 1) failed "to acknowledge the fact that the defendant's position concerning obstruction of justice was erroneously determined," (Pet'r's

Application at 6), and 2) applied incorrect Sentencing Guideline language, in contravention of the *ex post facto* clause of the United States Constitution, Art. I, § 9.

### Obstruction of Justice

■ Mr. Giordano urges that he should not have received a two-level enhancement for obstruction of justice, because "[t]here was no finding of facts or conclusions of law concerning perjury, or wilfulness, in relationship to impeding, obstructing, or attempting to impede or obstruct the administration of justice." Pet'r's Application at 7.[1]

That ignores the record in this case. In denying Mr. Giordano's motion to withdraw his guilty plea, this court described material submitted by Mr. Giordano as "fiction", and to the extent it was relevant, rejected it as "false." *U.S. v. Giordano*, 94 Cr. 606, Memo. and Order at 5, 6 (S.D.N.Y. June 21, 1996).[2]

At his sentencing, the court stated that "... Mr. Giordano has provided material false information to a judge, that is to say, most saliently the assertion that the Koreans gave the money to Mancusi in Hong Kong, rather than his giving the money to Mancusi in Yonkers, and therefore, should suffer the increase in 2 levels for obstruction of justice. It has certainly put everybody to great effort, including counsel and the people involved ..." Sentencing Tr. at 15.

After pointing out that the two-week trial eliminated any need for a separate hearing (*id.* at 20), the court reiterated, "I believe that what was submitted post-trial, post-plea in an effort to withdraw the plea was as I described it in my [June 21, 1996] opinion. Actually it went beyond that, it was perjury. And I believe Mr. Giordano is taxable with submitting false material to the court." *Id.* (punctuation in original corrected).

The cases Mr. Giordano cites are inapposite, and one was overruled, *U.S. v. Dunnigan*, 944 F.2d 178 (4th Cir.1991), *rev'd*, 507

U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

The argument that Mr. Giordano should not have received the enhancement for obstruction of justice is frivolous, and will not be granted a certificate of appealability.

### Sentencing Guideline Language

■ Mr. Giordano argues that his sentence violates Article I, Section 9 of the United States Constitution, and Section 1B1.11 of the Sentencing Guidelines because it subjected him to increased punishment of a three-point increase in his offense level because he knew *or believed* that the funds he laundered were the product of narcotics trafficking, while under the Sentencing Guideline in effect at the time of his offense, such an increase was warranted only when a defendant *knew* the source (in other words, the earlier version did not include the words "or believed"). *Compare* U.S.S.G. § 2S1.1(b)(1) before and after Nov. 1, 1991.

However, in imposing the increase in offense level, the issue was not whether Mr. Giordano *believed* the funds came from drug sales, but whether (despite his denial) *knowledge* should be imputed to him because of his willful blindness to circumstances which made it apparent that the money he laundered came from drug sales. That is clear from the colloquy at his sentence. Belief was not mentioned. Both Mr. Giordano's counsel and the court spoke only of his knowledge, and the relevant finding concerned his knowledge:

> Mr. Schoen [Mr. Giordano's counsel]: I assume the court is finding—I shouldn't assume—the court is finding that this defendant *knew* that these were drug proceeds?

> The Court: Or willfully blinded himself to such *knowledge* to such degree that he is

---

1. On his original appeal, the Court of Appeals declined to address Mr. Giordano's sentencing contentions since his sentence fell within the stipulated range, from which he had waived appeal. *U.S. v. Maher*, 108 F.3d 1513, 1531 (2nd Cir.1997).

2. At page five of its November 3, 1998 Opinion and Order, the court quotes the Court of Appeals' summary of the factual basis underlying Mr. Giordano's plea of guilty.

chargeable with *knowledge* as a matter of law.

Sentencing Tr. at 9 (emphasis supplied).

The difference between the two versions of the Guidelines, therefore, is immaterial, since the court never considered what Mr. Giordano believed, but found he was chargeable with knowledge as a matter of law.

In fact, the insertion of "belief" in the 1991 amendment to the Guidelines served quite a different purpose: to cover government "sting" operations where the defendant believed the agent's statement that the money to be laundered was criminal proceeds, but could not "know" that, because it was actually government "sting" money. As the amendment's commentary explained, "This amendment revises this guideline to reflect the enactment of subsection (a)(3) of 18 U.S.C. § 1956 that authorizes undercover 'sting' operations in money laundering cases. Such cases differ from those prosecuted under subsection (a)(1) in that the money being laundered is not actually criminal proceeds, but is government 'sting' money that an undercover officer represents to be criminal proceeds." U.S.S.G. § 2S1.1(b)(1), app. C, amendment 378 (1991).

In Mr. Giordano's case, the court found that his conscious avoidance of knowledge was the equivalent of knowledge itself. Cases to which the 1989 Sentencing Guidelines apply endorse conscious avoidance as a method of establishing the knowledge element of a substantive criminal charge.[3] Recent cases determine that conscious avoidance also provides the requisite knowledge to support the sentencing enhancement under U.S.S.G. § 2S1.1(b)(1):

> [G]iven the dangers of money laundering and the opportunities that it creates for drug dealers to engage in profitable drug trafficking, it is sensible to impose a heavier penalty when the government has clearly shown that the launderer had every reason to know he was dealing with a narcotics trafficker but chose to deliberately ignore the effect of his or her activities.

3. *See U.S. v. Khan*, 53 F.3d 507, 516–17 (2nd Cir.1995) (conscious avoidance proper to prove knowledge in money laundering case); *U.S. v. Matos*, 905 F.2d 30, 34–35 (2nd Cir.1990) (sub-

*U.S. v. Gamez*, 1 F.Supp.2d 176, 182 (E.D.N.Y.1998). *Accord U.S. v. Blarek*, 7 F.Supp.2d 192 (E.D.N.Y.1998).

## Certificate of Appealability

 Since the Sentencing Guidelines use the phrase "knew or should have known" in other places, *e.g.* § 3A1.1(b), one can argue that conscious avoidance should not be used as the equivalent of knowledge in provisions where those words might naturally have been used, if that were intended, but were not. They were not used in § 2S1.1, yet one could say the same result is reached by use of "conscious avoidance." Accordingly, a certificate of appeal will issue on that point, although on none of the others (*see* Nov. 3, 1998 Opinion and Order).

So ordered.

stantial foot traffic, people carrying packages, caller asking about the availability of some "thing", drugs in car sufficient to support conscious avoidance charge).